IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDY SCOTT SIMS,<br><br>　　　　　　　　　Petitioner,<br><br>　　v.<br><br>AUDREY KING, Acting Executive Director,<br><br>　　　　　　　　　Respondent. | Case No. 1:10-cv-02287 MJS (HC)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY** |

Petitioner is involuntarily committed to Coalinga State Hospital as a sexually violent predator (SVP) and proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent, Audrey King, Acting Executive Director of Coalinga State Hospital, is hereby substituted as the proper respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure. Respondent is represented by Lewis A. Martinez of the office of the California Attorney General. Both parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c). (ECF Nos. 7, 12.)

**I.　　PROCEDURAL BACKGROUND**

Petitioner is currently committed to Coalinga State Hospital pursuant to a judgment of the Superior Court of California, County of Fresno, following trial in which a

jury found the allegations that Petitioner was a SVP true on March 16, 2009. (Clerk's Tr. at 263-64.) On March 17, 2009, the trial court ordered Petitioner committed to Coalinga State Hospital. (Id.)

Petitioner filed a direct appeal with the California Court of Appeal, Fifth Appellate District, which was denied on July 26, 2010. (Lodged Doc. 3.) The court affirmed the holding of the trial court, except as to the commitment of Petitioner for an indeterminate term. (Id. at 18.) The Court of Appeal remanded the matter back to the trial court to determine the issues after the finality of the proceedings in People v. McKee, 47 Cal.4th 1172 (2010). Petitioner filed a petition for review with the California Supreme Court, which was summarily denied on October 13, 2010. (Lodged Doc. 1; Pet. at 29.)

Petitioner filed the instant federal habeas petition on December 9, 2010. (Pet., ECF No. 1.) In his petition, Petitioner presents four claims for relief. Claim three of the petition presents an equal protection challenge to his indefinite commitment that was the subject of the remand by the California Court of Appeal. According to the California Court of Appeal online docket, a second state appeal was filed in the instant matter on February 25, 2013, which has yet to be adjudicated.

Respondent filed an answer to the petition on May 25, 2011. (Answer, ECF No. 13.) Petitioner filed a traverse on August 11, 2011. (Traverse, ECF No. 19.) On July 30, 2012, this Court issued an order requiring Petitioner to file a motion to stay the petition, or file notice of intent to withdraw this third claim which is still being adjudicated in state cour,t and proceed with the remaining claims of the petition. (Order, ECF No. 21.) On August 14, 2013, Petitioner filed a motion to withdraw claim three and proceed with the remaining claims of his petition. (Mot., ECF No. 22.)

## II. STATEMENT OF THE FACTS[1]

### A. Background

---

[1] The Fifth District Court of Appeal's summary of the facts in its July 26, 2010 opinion is presumed correct. 28 U.S.C. § 2254(e)(1).

>On direct appeal, the California Court of Appeal summarized as follows:
>
>>On January 5, 1995, Sims pled to committing a lewd and lascivious act by force on a child under the age of 14, a violation of Penal Code section 288, subdivision (a), which is a qualifying prior under the SVPA.
>>
>>On June 27, 2007, while Sims was at Wasco State Prison, the Fresno County District Attorney's Office filed a petition alleging that Sims was an SVP and seeking to have him civilly committed. A jury trial commenced on the petition on January 7, 2009, but a mistrial was declared on January 12.
>>
>>A new trial commenced on March 4, 2009. Dr. Dawn Starr, a psychologist who had interviewed Sims in May 2007, testified at the trial. Starr determined that Sims had "fairly severe" developmental difficulties, a general mood disorder, and some psychotic problems. Starr diagnosed Sims as having nonexclusive type pedophilia, a qualifying mental disorder under the SVPA.
>>
>>Starr based her diagnosis of pedophilia in large part on Sims's history. On April 2, 1984, at approximately the age of 16, Sims tried to force a seven-year-old boy to orally copulate him. On May 5, 1984, Sims took another seven-year-old boy into a basement, pulled down the victim's pants and underwear, massaged the victim's legs, and attempted to lie down on top of the victim. Sims was interrupted when two people happened upon the scene. Sims eventually admitted he took the victim to the basement to "fuck him."
>>
>>In August 1984, when Sims was 16, he had intercourse with a seven-year-old girl several times and fondled the genitals of the girl's three-year-old brother. For these offenses, Sims was sent to the California Youth Authority and later to Napa State Hospital, where he remained until he was 23 years old. While at Napa State Hospital, Sims had sex with a 13-year-old girl and anal sex with a person who was in a body cast.
>>
>>On August 31, 1994, Sims asked a seven-year-old girl to join him for milk and cookies. When she did, he pulled off his pants and underwear, attempted to pull off the girl's pants and underwear, and put his penis between her legs. The girl stated that on an earlier occasion Sims had cornered her in a stairwell, pulled down his pants, and rubbed his penis between her legs.
>>
>>Sims also abused cocaine and had multiple parole revocations for using cocaine. The intellectual tests given to Sims indicated he was "mildly mentally retarded." Sims had some medical problems, including asthma and epilepsy.
>>
>>Starr analyzed Sims's risk of reoffense using the Static-99 and Static-2002 actuarial tools. Sims's score on the Static-99 placed him in the high risk category; his score on the Static-2002 placed him in the highest risk category. Sims's risk factors included (1) multiple victims, other than the victim of the qualifying offense, (2) prior sex offenses, other than the qualifying offense, and (3) that the victims were unrelated.
>>
>>Starr opined that Sims presented a serious and well-founded risk of

reoffending in a sexually violent manner if released. Sims's age and medical issues would not prevent him from committing sexually violent offenses if released.

Dr. Carolyn Murphy, another psychologist, also evaluated Sims. Murphy diagnosed Sims as having pedophilia and a psychotic disorder not otherwise specified. The unspecified psychotic disorder was diagnosed because Sims exhibited some hallucinations and some false beliefs about his body. Murphy also concluded that Sims had a personality disorder with antisocial traits.

In addition to the Static-99 and Static-2002 tests, Murphy evaluated Sims using the MnSOST-R (Minnesota Sex Offender Screening Tool-Revised), another actuarial tool that looks at different factors than the other two tests. Murphy opined that Sims presented a serious and well-founded risk to reoffend in a sexually violent manner because of the predatory crimes he had committed, the actuarial risk assessment, he previously had violated community release, and he had not completed sex offender treatment.

A third psychologist, Dr. Michael Musacco, also evaluated Sims. Musacco's diagnosis agreed with the other two psychologists -- pedophilia. Musacco also found that Sims's intelligence was in the low borderline range and that Sims had a cocaine dependence. Musacco administered the three actuarial tests and found that Sims scored at or above the high risk range on each of the three tests. Musacco opined that Sims was at high risk of reoffending.

Sims presented testimony from a clinical psychologist, Dr. Raymond E. Anderson. Anderson did not see evidence of a psychotic disorder. Anderson opined that Sims was not a pedophile and that there were no indicators that he was unable to control his behavior. Anderson opined that Sims's risk of reoffense was about five percent and Sims did not present a serious risk of reoffense.

Dr. Jules Burstein, a clinical and forensic psychologist, also evaluated Sims. Burstein found that Sims had a depressive disorder and cocaine dependence, which was in remission. He concluded Sims did not have a mental disorder that predisposed him to commit sexual offenses. Sims was depressed because he had been "locked up a long time" and wanted to be released.

Burstein did not agree with the diagnosis of pedophilia. Burstein opined that statistical tests were "fraught with difficulties." Burstein opined that Sims would be at low risk for reoffending if he participated in substance abuse treatment and sex offender treatment after release.

David Purvis, who has a master's degree in social work, was the director of a nonprofit institute. Purvis provided counseling in various areas, including domestic violence, substance abuse, anxiety disorders, and sex offender counseling. Sims had expressed an interest in Purvis's program. Purvis felt he could work with Sims and that Sims would be an "interesting challenge."

Sims's younger brother, Michael, testified that he had a great relationship with Sims and trusted him around his young son and niece.

> He also trusted Sims around other people's children. Michael was willing to see that Sims registered as a sex offender and that he attended sex offender and substance abuse treatment. Michael and Sims planned to move to Texas to be near an aunt and uncle once Sims was released.
>
> LaNell Williams operated facilities for sex offenders. Sims previously had been in one of Williams's facilities for about a year. Williams was willing to work with Sims again.
>
> Sims testified on his own behalf. Sims was "very sorry for what [he had] done to [his] victims." He claimed he never fantasized about sex with children. He was in phase one of sex offender treatment at the state hospital when his treatment was interrupted by the trial. He wanted to move to Texas and testified he would behave himself in Texas.
>
> On March 16, 2009, the jury found Sims was an SVP. The trial court ordered Sims committed for an indefinite term.

People v. Sims, F057352, 2010 Cal. App. Unpub. LEXIS 5820, at *2-*8 (Cal. App. 2010).

### III.  DISCUSSION

#### A.  Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out of the Fresno County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2241(d); 2254(a). Accordingly, the Court has jurisdiction over the action.

#### B.  Legal Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Under AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution

or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n. 7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

### 1. Contrary to or an Unreasonable Application of Federal Law

A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams, 529 U.S. at 405-06. "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that even a general standard may be applied in an unreasonable manner" Panetti v. Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted). The "clearly established Federal law" requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009). For a state decision to be an unreasonable application of clearly established federal law under § 2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle (or principles) to the issue before the state court. Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003). A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable." Id. at 75-76, quoting Williams, 529 U.S. at 409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the Court further stresses that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." 131 S. Ct. 770, 785 (2011), (citing Williams, 529 U.S. at 410) (emphasis in original). "A state court's determination that a claim lacks

6

merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786 (citing Yarborough v. Alvarado, 541 U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts have in reading outcomes in case-by-case determinations." Id.; Renico v. Lett, 130 S. Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 129 S. Ct. 1411, 1419 (2009), quoted by Richter, 131 S. Ct. at 786.

### 2. Review of State Decisions

"Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the claim rest on the same grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991). This is referred to as the "look through" presumption. Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198 (9th Cir. 2006). Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion, "does not require that there be an opinion from the state court explaining the state court's reasoning." Richter, 131 S. Ct. at 784-85. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Id. ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Richter instructs that whether the state court decision is reasoned and explained, or merely a summary denial, the approach to evaluating unreasonableness under § 2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786. Thus, "even a strong case for relief does not mean the state court's contrary conclusion

was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. at 75). AEDPA "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." Id. To put it yet another way:

> As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 786-87. The Court then explains the rationale for this rule, i.e., "that state courts are the principal forum for asserting constitutional challenges to state convictions." Id. at 787. It follows from this consideration that § 2254(d) "complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for later federal habeas proceedings." Id. (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977).

### 3. Prejudicial Impact of Constitutional Error

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness). Some constitutional errors, however, do not require that the petitioner demonstrate prejudice. See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984). Furthermore, where a habeas petition governed by AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard. Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002). Musalin v. Lamarque, 555 F.3d at 834.

///

///

## IV. REVIEW OF PETITION

### A. Claim One: Ineffective Assistance of Counsel

Petitioner, in his first claim, asserts that his trial counsel was ineffective for failing to object and therefore not preserving Petitioner's claims of Equal Protection on appeal. (See Pet., ECF No. 1 at 4.) As discussed in this Court's prior order, Petitioner's Equal Protection claim is still being adjudicated in state court.

In Strickland v. Washington, 466 U.S. 668, 694 (1984), the Supreme Court held that there are two components to an ineffective assistance of counsel claim: "deficient performance" and "prejudice." "Deficient performance" in this context means unreasonable representation falling below professional norms prevailing at the time of trial. See Strickland, 466 U.S. at 688-89. To meet his burden of showing the distinctive kind of "prejudice" required by Strickland, Petitioner must affirmatively "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." See Strickland, 466 U.S. at 694; see also Richter, 131 S. Ct. at 791 ("In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently."); Lockhart v. Fretwell, 506 U.S. 364, 372 (1993) (noting that the "prejudice" component "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair").

Moreover, it is unnecessary to address both Strickland requirements if petitioner makes an insufficient showing on one. See Strickland, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."); Rios v. Rocha, 299 F.3d 796, 805 (9th Cir. 2002) ("Failure to satisfy either prong of the Strickland test obviates the need to consider the other.").

Here, Petitioner has not shown that he was prejudiced by trial counsel's conduct. Petitioner's claim has been presented, and is still being adjudicated on appeal. To the

1  extent that Petitioner claims that his counsel's failure to object prejudiced him in
2  preventing appellate review, his claim fails. Petitioner is not entitled to habeas relief with
3  regard to his first claim.

### B.  Claim Two: Failure of Court to Dismiss Juror for Cause

Petitioner contends that his rights were violated when the Court refused to dismiss a juror for cause thereby forcing Petitioner's trial counsel to use a peremptory challenge to dismiss the juror.

#### 1.  State Court Decision

Petitioner presented this claim by way of direct appeal to the California Court of Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the appellate court and summarily denied in a subsequent petition for review by the California Supreme Court. (See Lodged Doc. 3.) Because the California Supreme Court's opinion is summary in nature, this Court "looks through" that decision and presumes it adopted the reasoning of the California Court of Appeal, the last state court to have issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n.3 (1991) (establishing, on habeas review, "look through" presumption that higher court agrees with lower court's reasoning where former affirms latter without discussion); see also LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000) (holding federal courts look to last reasoned state court opinion in determining whether state court's rejection of petitioner's claims was contrary to or an unreasonable application of federal law under 28 U.S.C. § 2254(d)(1)).

In denying Petitioner's claim, the California Court of Appeal explained:

**I**II. Juror Challenge

> Sims challenged Prospective Juror S. for cause, which challenge was denied. He then exercised a peremptory challenge to excuse her from the jury. Later, defense counsel objected to the denial of his challenge for cause and to the jury as constituted, stating he had used all his peremptory challenges and could have used the peremptory on another juror he had concerns about if Prospective Juror S. had been removed for cause. Sims thus has preserved this issue for appeal. (People v. Millwee (1998) 18 Cal.4th 96, 146 ["To preserve a claim of error in the denial of a challenge for cause, the defense must exhaust its peremptory challenges

and object to the jury as finally constituted"].)

***Standard of review***

"[T]he qualification of jurors challenged for cause are matters within the wide discretion of the trial court, seldom disturbed on appeal. [Citation.] To find actual bias on the part of an individual juror, the court must find 'the existence of a state of mind' with reference to the case or the parties that would prevent the prospective juror 'from acting with entire impartiality and without prejudice to the substantial rights of either party.' [Citation.]" (Odle v. Superior Court (1982) 32 Cal.3d 932, 944, quoting Pen. Code, former § 1073, now Code Civ. Proc., § 225, subd. (b)(1)(C).)

When a juror gives conflicting or equivocal testimony as to his or her capacity for impartiality, the determination of the trial court as to the juror's state of mind is binding on the appellate court. (People v. Maury (2003) 30 Cal.4th 342, 376; People v. Kaurish (1990) 52 Cal.3d 648, 675 (Kaurish).) If the prospective juror's statements are consistent, the trial court's ruling will be upheld if supported by substantial evidence. (Maury, at pp. 376-377.)

Before this court "will find error in failing to excuse a seated juror, the juror's inability to perform a juror's functions must be shown by the record to be a 'demonstrable reality.' The court will not presume bias, and will uphold the trial court's exercise of discretion … under [Penal Code] section 1089 if supported by substantial evidence. [Citation.]" (People v. Holt (1997) 15 Cal.4th 619, 659.)

***Analysis***

Before granting or denying a challenge for cause concerning a prospective juror, a trial court must have sufficient information regarding the prospective juror's state of mind to permit a reliable determination as to whether the juror's views would """prevent or substantially impair""" the performance of his or her duties. (People v. Ochoa (2001) 26 Cal.4th 398, 431.) "Demonstrated bias in the responses to questions on voir dire may result in a juror's being excused for cause; hints of bias not sufficient to warrant challenge for cause may assist parties in exercising their peremptory challenges." (In re Hitchings (1993) 6 Cal.4th 97, 111.)

Prospective Juror S. answered a written questionnaire and was extensively questioned during voir dire. Prospective Juror S. was married, was a registered pediatric nurse, and was the co-owner of three homes for medically fragile children. Her husband was a chaplain for the Fresno City Police Department. Prospective Juror S.'s daughter, now an adult, had been sexually molested at eight years of age by a foster child in the home. The molestation was reported to law enforcement. The foster child was arrested and was required to register as a sex offender.

Prospective Juror S. answered "no" to the question of whether she believed sex offenders with multiple convictions should not be released from custody, explaining she hesitated to "give up" on people. She also did not believe that all people who behaved in a sexually inappropriate way with a child automatically had a mental disorder. She believed that in some cases sex offenders could be rehabilitated if they received treatment and were motivated.

Prospective Juror S. acknowledged that she had formed a "soft opinion -- hopefully flexible" about the case. She also stated she would rather not sit on the case because she would be affected by what had happened to her daughter. She also commented, "I would hope I could have an open enough mind to be fair." Prospective Juror S. stated that she would have "sympathy for the victims --especially children," but hoped she "could remain unbiased -- but [was] not completely sure."

When asked if she thought she could be an impartial juror, Prospective Juror S. stated she was "honestly not quite sure" and would "have to wait and see" if she could sit as an impartial juror. She was not sure "how decisive" she could be and was not sure she could serve "without having my own experiences be entangled."

When asked whether she could accept and analyze the testimony of witnesses and make a determination on the validity of the petition based on the testimony, Prospective Juror S. stated, "I think I can."

Although other judges faced with similar conflicting comments from a prospective juror may have removed her for cause, it was for the trial court to decide her fitness to serve. (Maury, supra, 30 Cal.4th at p. 376; Kaurish, supra, 52 Cal.3d at p. 675.) In Kaurish, for example, the trial court denied the defendant's for-cause challenge to a prospective juror who, in the words of the Supreme Court, "gave conflicting testimony as to her ability to be unbiased." (Kaurish, at p. 675.)

Similarly, in People v. Hillhouse (2002) 27 Cal.4th 469, a prospective juror gave what the Supreme Court described as "equivocal and somewhat conflicting" statements. (Id. at p. 488.) The juror wrote in a questionnaire that, based on what he had read in the newspapers, he believed the defendant was guilty. And he acknowledged the investigator for the prosecution was a friend of his. In short, "He made clear that he had preconceptions about the case, but he also understood he had to base his decision on the evidence at trial rather than what he read in the newspapers, and he said he would try to be impartial." (Ibid.) The Supreme Court upheld the trial court's order denying the defendant's challenge for cause:

> "On this record, the trial court could reasonably conclude the juror was trying to be honest in admitting to his preconceptions but was also sincerely willing and able to listen to the evidence and instructions and render an impartial verdict based on that evidence and those instructions. Indeed, a juror like this one, who candidly states his preconceptions and expresses concerns about them, but also indicates a determination to be impartial, may be preferable to one who categorically denies any prejudgment but may be disingenuous in doing so. A reviewing court must allow the trial court to make this sort of determination. The trial court is present and able to observe the juror itself. It can judge the person's sincerity and actual state of mind far more reliably than an appellate court reviewing only a cold transcript. We see no basis on which to overturn the trial court's determination that this juror could be impartial." (Id. at pp. 488-489.)

> We reach the same conclusion in the present case. Here, Prospective Juror S.'s comments indicated a person who was being thoughtful and honest in answering the juror questionnaire and voir dire questions. She showed an awareness of her own potential bias but indicated she would listen to and accept the testimony of witnesses and try to remain openminded and fair. She stated she would have sympathy for the victims, but she hoped she could remain unbiased. As in Hillhouse, we see no basis upon which to overturn the trial court's determination that Prospective Juror S. could be impartial.

People v. Sims, 2010 Cal. App. Unpub. LEXIS 5820, 23-29 (Cal. App. 5th Dist. July 26, 2010)

### 2. Analysis

A trial court's failure to strike a biased juror for cause will not constitute a Sixth Amendment violation so long as the jury that sits is impartial. Ross v. Okla., 487 U.S. 81, 88 (1988). "The fact that the defendant had to use a peremptory challenge to achieve that result does not mean that the Sixth Amendment was violated." See id.; Poland v. Stewart, 169 F.3d 573, 583 (9th Cir. 1998). Petitioner must establish prejudice. Prejudice could be established if the jury as finally constituted was not impartial or that the loss of the peremptories forced Petitioner to accept a biased juror. Poland, 169 F.3d at 583.

The fact that a defendant has to use a peremptory challenge to remedy a court's failure to strike a juror for cause does not mean that due process was violated either. Having to use a peremptory challenge to help secure the constitutional guarantee of trial by an impartial jury is in line with the principal reason for peremptories; it does not amount to the loss of a peremptory challenge. See U.S. v. Martinez-Salazar, 528 U.S. 304, 314-16 (2000). "A hard choice is not the same as no choice." Id. at 315.

Here, Petitioner used a peremptory challenge to dismiss a juror whom he thought to harbor bias. Petitioner does not attempt to establish that the sitting jury was not impartial as a result of the trial court's failure to dismiss the prospective juror for cause. Finally, Petitioner does not contend that the loss of peremptories forced him to accept a biased juror. Therefore, Petitioner's claim is foreclosed by the above-cited authorities. Accordingly, petitioner's claim is denied.

### C.     Claim Four: Remand and Stay of Petitioner's State Appeal[1]

In his final claim, Petitioner contends that his rights were violated when the state court remanded the matter on appea; he maintins that the court should have allowed further review of his claim regarding the denial of removal of a juror for cause and for failure to call a defense witness. (Pet. at 5.) Here, the California reviewed and denied Petitioner's claim regarding the failure of the trial court to dismiss a juror for cause. Petitioner presented the claim as claim two of the present petition, and the Court denied the claim on the merits.

Further, Petitioner claims that he was not able to call a witness at trial. Petitioner's claim is insufficiently plead.

The notice pleading standard applicable in ordinary civil proceedings does not apply in habeas corpus cases. Habeas Rules 2(c), 4, and 5(b) require a more detailed statement of all grounds for relief and the facts supporting each ground; the petition is expected to state facts that point to a real possibility of constitutional error and show the relationship of the facts to the claim. Habeas Rule 4, Advisory Committee Notes, 1976 Adoption; Mayle v. Felix, 545 U.S. 644, 655 (2005); O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (quoting Blackledge v. Allison, 431 U.S. 63, 75 n.7 (1977)). This is because the purpose of the rules is to assist the district court in determining whether the respondent should be ordered to show cause why the writ should not be granted and to permit the filing of an answer that satisfies the requirement that it address the allegations in the petition. Mayle, 545 U.S. at 655. Allegations in a petition that are vague, conclusional, or palpably incredible, and that are unsupported by a statement of specific facts, are insufficient to warrant relief and are subject to summary dismissal. Jones v. Gomez, 66 F.3d 199, 204-05 (9th Cir. 1995); James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994).

Here, Petitioner has failed to state sufficient facts in his claim concerning the

---

[1] Petitioner voluntarily withdrew his third claim for Equal Protection which is currently being adjudicated in state court.

failure to call a witness. Petitioner does not provide any information regarding who the witness wand what testimony he or she may have provided that would have assisted Petitioner at trial. Even after Respondent answered the claim and asserted that it was insufficiently pleaded, Petitioner provided no further support in his traverse. Reviewing Petitioner's briefing in his state appeals, it does not appear that Petitioner presented such a claim. Without more, Petitioner has not stated his claim with sufficient particularity to entitle it to judicial review. Petitioner's fourth claim must be denied.

## V. CONCLUSION

Petitioner is not entitled to relief with regard to the claims presented in the instant petition. The Court therefore orders that the petition be DENIED.

## VI. CERTIFICATE OF APPEALABILITY

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c) (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>>
>> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of

15

the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327; Slack v. McDaniel, 529 U.S. 473, 484 (2000).  While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 537 U.S. at 338.

In the present case, the Court finds that no reasonable jurist would find the Court's determination that Petitioner is not entitled to federal habeas corpus relief wrong or debatable, nor would a reasonable jurist find Petitioner deserving of encouragement to proceed further.  Petitioner has not made the required substantial showing of the denial of a constitutional right.  Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

**ORDER**

Accordingly, IT IS HEREBY ORDERED:

1) The petition for writ of habeas corpus is DENIED;

2) All pending motions are DENIED as moot;

3) The Clerk of Court is DIRECTED to enter judgment and close the case; and

4) The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   August 27, 2013                    /s/ *Michael J. Seng*
                                            UNITED STATES MAGISTRATE JUDGE